UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

DANIEL RAMOS and MIRIAN QQUEHUE, on behalf of themselves and all others similarly situated,

                                       Plaintiffs,

                     -against-

THE CHEESECAKE FACTORY RESTAURANTS, INC.,

                                     Defendant.

-------------------------------------------------------------------- X

**21 Civ. 2786**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiffs Daniel Ramos and Mirian Qquehue ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendant The Cheesecake Factory Restaurants, Inc. (the "Cheesecake Factory" or "Defendant") allege:

## NATURE OF THE ACTION

       1.     Plaintiff Daniel Ramos works as a busser at a Cheesecake Factory location in Yonkers, New York.  Plaintiff Mirian Qquehue worked as a cook at two Cheesecake Factory restaurants located in Westchester, New York from approximately 2011 to December 24, 2021.  Throughout their employment periods, Plaintiffs and all other hourly-paid workers at the Cheesecake Factory restaurants (the "Hourly Workers") spent more than 25% of their work time performing duties that were physical in nature and were therefore "manual workers" under the New York Labor Law ("NYLL").  Despite this, the Cheesecake Factory paid all Hourly Workers in New York State on a biweekly basis, in violation of the frequency of payments section of the NYLL.  Further, Defendant required several tip-earning employees, such as Ramos, to work off the clock, thereby failing to pay them for all hours worked per workweek.

2.      In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL.  These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted).  This concept is not new.  For decades, the United States Supreme Court has likewise interpreted the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Id.* (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

3.      Defendant violated Section 191 of the NYLL by paying its Hourly Workers' wages on a biweekly basis.  As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned."  N.Y. Lab. L. § 191(1)(a)(i).  Furthermore, Defendant violated the NYLL and the FLSA by failing to pay several tipped employees for all hours worked per workweek.  As a result, several tipped employees received wage statements that did not accurately reflect all of their hours worked per workweek.

4.      Plaintiffs bring this action on behalf of themselves and all similarly situated Hourly Workers to recover unpaid wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and Wage Theft Prevention Act ("WTPA").

## JURISDICTION

5.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the amount in controversy against Defendant exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendant.

6.     There are over 100 members in the proposed class.

7.     Defendant operates and does business in New York State and is subject to personal jurisdiction in this Court.

8.     This Court also has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

9.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because Defendant's business operations and the events giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

**Plaintiffs**

10.     Daniel Ramos resides in Westchester, New York.

11.     Ramos has worked as a busser at the Cheesecake Factory since approximately mid-December 2021.

12.     Mirian Qquehue resides in Westchester, New York.

13.     Qquehue worked for the Cheesecake Factory as a prep and line cook from approximately 2011 to December 24, 2021

**Defendant The Cheesecake Factory Restaurants, Inc.**

14.     Defendant The Cheesecake Factory Restaurants, Inc. is a foreign business corporation organized and existing under the laws of the State of California.

15.     The Cheesecakes Factory's principal executive office is located at 26901 Malibu Hills Road, Calabasas Hills, California 91301.

16.     The Cheesecake Factory owns and operates 306 Cheesecake Factory restaurants throughout the United States and Canada, twelve of which are located in New York State.

17.     The Cheesecake Factory restaurants are recognized for their "extensive, innovative and evolving menu in an upscale casual, high energy setting with attentive, efficient and friendly service" (https://investors.thecheesecakefactory.com/about-us/the-cheesecake-factory/default.aspx (last visited April 4, 2022).

18.     Throughout Plaintiffs' employment, the Cheesecake Factory has had employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials moved in or produced for interstate commerce by any person.

19.     Throughout Plaintiffs' employment, Hourly Workers at the Cheesecake Factory engaged in interstate commerce or in the production of goods for interstate commerce and handled, sold, or otherwise worked on goods or materials moved in or produced for interstate commerce by any person.

20.     In the three years prior to the filing of this Complaint, the Cheesecake Factory's annual gross volume of sales exceeded $500,000.

21.     Throughout Plaintiffs' employment, the Cheesecake Factory was a covered employer within the meaning of the NYLL.

22.     Throughout Plaintiffs' employment, the Cheesecake Factory employed Plaintiffs and all other Hourly Workers within the meaning of the NYLL.

## FACTUAL ALLEGATIONS

**Plaintiffs Are Manual Workers Paid on a Bi-Weekly Basis**

23.     Qquehue worked at the Cheesecake Factory restaurant located at One Maple Avenue, White Plains, New York 10601 from approximately 2011 to 2013.

24.     Qquehue worked at the Cheesecake Factory restaurant located at 140 Market Street, Yonkers, New York 10710 from approximately 2013 to approximately the middle of 2018.

25.     Qquehue worked at the Cheesecake Factory restaurant located in Stamford, Connecticut from approximately the middle of 2018 to early 2019.

26.     Qquehue returned to work at the Cheesecake Factory restaurant located at One Maple Avenue, White Plains, New York 10601 in early 2019, and she continued to work there until December 24, 2021.

27.     Qquehue worked as a prep and line cook throughout her employment at the Cheesecake Factory, regardless of the location of the restaurant where she worked.

28.     As a prep and line cook, Qquehue's primary work duties were to prepare dishes, cook food items, and maintain the cleanliness of her workstation.

29.     Throughout her employment at the Cheesecake Factory as a prep and line cook, Qquehue spent more than a quarter (25%) of her working time each workday performing duties that were physical in nature, such as cutting and storing ingredients, frying meats, cooking hamburgers and quesadillas on a grill, plating dishes, physically moving dishes and containers, and cleaning her workstation with sanitizing towels and a broom.

30.     Qquehue had to stand, bend, and walk to perform her work duties.

31.     Ramos has worked as a busser at the Cheesecake Factory located at 140 Market Street, Yonkers, New York 10710 since approximately mid-December 2021.

32.     Throughout his employment at the Cheesecake Factory as a busser, Ramos spends more than a quarter (25%) of his working time each workday performing duties that are physical in nature, such as wiping tables, carrying trays of dishes and glassware to the dishwasher, carrying dishes and glasses to customers, rolling silverware, walking to customers' tables to address their requests, and cleaning the restaurant dining room.

33.     Throughout their employment periods, regardless of the location of the restaurant where they worked, Defendant paid Plaintiffs' wages on a biweekly basis.

34.     Because Defendant paid Plaintiffs' wages on a biweekly basis, Defendant always paid their wages due for the first workweek of each biweekly pay period more than seven days after the end of the workweek.

35.     By way of example, on December 7, 2021, the Cheesecake Factory paid Qquehue's wages earned for her hours worked in the workweeks of November 22 to 28, 2021, and November 29 to December 5, 2021.

36.     Defendant paid Qquehue's wages earned for the workweek of November 22 to 28, 2021, on December 7, 2021, more than seven days after the end of the workweek.

37.     By way of example, on March 15, 2022, the Cheesecake Factory paid Ramos's wages earned for his hours worked in the workweeks of February 23 to March 1, 2022, and March 2 to 8, 2022.

38.     Defendant paid Ramos's wages earned for the workweek of February 23 to March 1, 2022, on March 15, 2022, more than seven days after the end of the workweek.

**Defendant Shaved Tipped Employees' Hours Worked**

39.     In December 2021, Defendant paid Ramos $14 per hour worked as an "in training dishwasher" and $9.35 per hour for hours worked as a busser.

40.     In December 2021, Defendant also paid Ramos $16.35 per overtime hour worked as a busser.

41.     Beginning in January 2022, Defendant paid Ramos $10 per regular hour worked and $17.50 per overtime hour worked.

42.     At various times throughout his employment, Defendant's managers have required Ramos to work off the clock and without pay.

43.     For example, on January 4, 2022, Defendant paid Ramos for his hours worked in the workweeks of December 15 to 21 and December 22 to 28, 2022, including his hours worked from 11:07 a.m. to 4:45 p.m. on December 26, 2021.

44.     According to the paystub that Defendant gave Ramos on January 4, 2022, Ramos worked forty (40) regular hours and 5.63 overtime hours as a busser in the workweek of December 22 to 28, 2022.

45.     However, on December 26, 2021, Ramos actually worked from 10:52 a.m. to 5:14 p.m. at the Cheesecake Factory, approximately forty-five (45) minutes more than Defendant paid him for this workday.

46.     As such, for the workweek of December 22 to 28, 2022, Defendant failed to pay Ramos an additional forty-five (45) minutes of overtime wages.

47.     For example, on February 26, 2022, Ramos's manager clocked Ramos out at 11:00 p.m., the restaurant's closing time.  However, Ramos continued working past 11:00 p.m., until approximately 12:54 a.m., to serve remaining customers and to clean the dining room as part of his post-shift closing duties.

48.     Defendant did not pay Ramos wages at his regular wage rate for his work performed between approximately 11:00 p.m. and 12:54 a.m. on February 26 to 27, 2022.

49.     For example, on March 5, 2022, Ramos began working at 5:07 p.m., but Defendant's managers failed to adjust his clock-in time from 6:21 p.m. to 5:07 p.m.  As

such, Ramos was not paid wages at his regular wage rate for his work performed between 5:07 p.m. and 6:21 p.m. on this workday.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff Ramos brings this action on behalf of himself and all similarly situated Hourly Workers who worked for Defendant at 140 Market Street, Yonkers, New York 10710 within the three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

51.     The FLSA Collective consists of over twenty Hourly Workers who have been victims of Defendant's common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

52.     Throughout Plaintiff's employment, Plaintiff Ramos and the FLSA Collective have often worked more than forty hours on at least some workweeks in the last three years, have performed similar tipped employee duties, and have been subjected to Defendant's common time shaving policy depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for hours worked over forty per workweek.

53.     Defendant is aware or should have been aware that the FLSA required it to pay Plaintiff Ramos and the FLSA Collective an overtime premium for hours worked over forty per workweek.

54.     Defendant's unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiff Ramos and the FLSA Collective.

55.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated Hourly Workers can be readily identified and located through Defendant's

records.  They should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated Hourly Workers who work or have worked for the Cheesecake Factory in any of its locations in New York State within the six years prior to the filing of this Complaint (the "Rule 23 Class").

57.     In addition to Plaintiffs' respective work duties described above, which other cooks and bussers at the Cheesecake Factory restaurants in New York State also performed, all non-exempt hourly-paid employees at the Cheesecake Factory restaurants in New York performed and continue to perform duties of a physical nature for more than a quarter (25%) of their working time each workday.  For example:

a.      Like bussers, waiters and runners walk to carry food and beverages to and from tables, stand while interacting with customers, garnish and carry dishes, polish and roll silverware, and clean the dining room with brooms and sanitizing towels;

b.      Bartenders stand and walk to interact with and serve customers at the bar, mix drinks, lift and open bottles, restock the bar with bottles and ingredients (*e.g.*, lemons), and clean the bar using sanitizing towels;

c.      Dishwashers constantly move to place dirty dishes into trays, which they then move into the dishwashing machine, stack clean dishes, and carry clean dishes to cooks and servers;

58.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

59.     The size of the Rule 23 Class exceeds 100 individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendant.

60.     Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

61.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, whether Defendant untimely compensated them in violation of NYLL § 191, whether Defendant unlawfully required tipped employees to continue working off the clock, and whether Defendant failed to provide tipped employees with wage statements reflecting all hours worked per workweek.

62.     For example, according to the Cheesecake Factory's handbook of August 2017: "Each payroll period is two weeks long, beginning on a Wednesday and ending two Tuesdays later.  Staff members are paid every other Tuesday, one week after the pay period ends."

63.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendant at various times within the applicable six-year statutory period.  They enjoy the same statutory right to be paid on a timely manner pursuant to the NYLL.  Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages because of Defendant's failure to comply with the NYLL.

64.     Plaintiffs and the Rule 23 Class have all been injured in that they have been untimely compensated due to Defendant's common policies, practices, and patterns of conduct.

65.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

66.     Plaintiffs have retained legal counsel competent and experienced in wage-and-hour litigation and class action litigation.

67.     There is no conflict between Plaintiffs and the Rule 23 Class members.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery because of Defendant's common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendant's compensation practices and to prosecute vigorously a lawsuit against Defendant to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

69.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(Fair Labor Standards Act – Unpaid Overtime)**

70.     Plaintiff Ramos repeats and incorporates all previous paragraphs.

71.     Defendant has willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff Ramos and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates per hour worked over forty per workweek.

72.     Defendant is an employer within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff Ramos and the FLSA Collective.

73.     Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff Ramos's and the FLSA Collective's compensation.

74.     Defendant was aware or should have been aware that the practices described in this Complaint were unlawful and has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff Ramos and the FLSA Collective.

75.     Due to Defendant's violations of the FLSA, Plaintiff Ramos and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

76.     Plaintiff Ramos repeats and incorporates all previous paragraphs.

77.     Pursuant to the NYLL and supporting New York State Department of Labor ("NYDOL") Regulations, including but not limited to 12 N.Y.C.R.R. Part 146, Defendant was required to pay Plaintiff Ramos and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked over forty per workweek.

78.     Defendant is an employer within the meaning of the NYLL §§ 190 and 651(6) and supporting NYDOL Regulations, and employed Plaintiff Ramos and the Rule 23 Class.

79.     Defendant failed to pay Plaintiff Ramos and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked over forty per workweek.

80.     Defendant has willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff Ramos and the Rule 23 Class overtime wages.

81.     Due to Defendant's willful violations of the NYLL, Plaintiff Ramos and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

### THIRD CLAIM
**(NYLL § 191 – Frequency of Payments)**

82.     Plaintiffs repeat and incorporate all foregoing paragraphs.

83.     Defendant is an employer that is subject to and must abide by the frequency of payments provision of the NYLL.

84.     Defendant paid Plaintiffs and the Rule 23 Class on a biweekly basis.

85.     In the last six years, Plaintiffs and the Rule 23 Class spent more than 25% of their working time performing work tasks of a physical nature.

86.     Plaintiffs and the Rule 23 Class were "manual workers" within the meaning of NYLL § 191(1)(a)(i).

87.     By paying Plaintiffs and the Rule 23 Class on a biweekly basis, Defendant paid Plaintiffs and the Rule 23 Class their wages due "later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. § 191(1)(a).

88.     Because Defendant failed to pay Plaintiffs and the Rule 23 Class on a weekly basis, they are entitled to recover liquidated damages equal to the full amount of their wages paid later than seven days after the end of a workweek in each biweekly period within the six years prior to the filing of this Complaint.

### FOURTH CLAIM
**(New York Labor Law – Failure to Provide Accurate Wage Statements)**

89.     Plaintiff Ramos repeats and incorporates all foregoing paragraphs.

90.     Defendant failed to furnish Plaintiff Ramos and the Rule 23 Class, with each wage payment, a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

91.     Due to Defendant's violation of the NYLL, § 195(3), Plaintiff Ramos and the Rule 23 Class are entitled to recover from the Defendant liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### FIFTH CLAIM
### (New York Labor Law – Unpaid Minimum Wages)

92.     Plaintiff Ramos repeats and incorporates all foregoing paragraphs.

93.     Defendant is an employer within the meaning of the NYLL §§ 190 *et seq.*, 651(6), and 652(1), and supporting NYDOL Regulations, including 12 N.Y.C.R.R. Part 146.

94.     The NYLL and its supporting regulations require that employers pay employees at least the minimum wage for all hours worked weekly up to forty.

95.     Defendant required Plaintiff Ramos and several tipped employees in its Yonkers location to work off the clock, meaning without any pay whatsoever.

96.     Defendant has willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff Ramos and the Rule 23 Class minimum hourly wages.

97.     As a result of Defendant's violations of the NYLL, Plaintiff Ramos and the Rule 23 Class have suffered damages by being denied minimum wages in accordance

with the NYLL in amounts to be determined at trial plus liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.      certify this case as a class action pursuant to Rule 23 for the class of employees described above, certify Plaintiffs as the representatives of the respective classes, and designate Plaintiffs' counsel as Class Counsel;

b.      designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.      declare Defendant violated the overtime wage provisions of the FLSA and the NYLL;

d.      declare Defendant violated the minimum wage provisions of the NYLL and supporting regulations;

e.      declare Defendant violated the notice and record keeping provisions of the NYLL and WTPA;

f.      declare Defendant violated the frequency of payment provision of the NYLL;

g.      declare Defendant's violations of the FLSA and NYLL were willful;

h.      award Plaintiff Ramos, the FLSA Collective, and the Rule 23 Class unpaid overtime wages pursuant to the FLSA and NYLL;

i.     award Plaintiff Ramos and the Rule 23 Class unpaid minimum wages;

j.     award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

k.     award Plaintiff Ramos and the Rule 23 Class statutory damages as a result of Defendant's failure to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

l.     award Plaintiff Ramos and the Rule 23 Class pre- and post-judgment interest;

m.     award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and NYLL; and

n.     award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
        April 4, 2022

                                    PECHMAN LAW GROUP PLLC

                                    By:

                                        Louis Pechman
                                        Gianfranco J. Cuadra
                                        Pechman Law Group PLLC
                                        488 Madison Avenue, 17th Floor
                                        New York, New York 10022
                                        Tel.: (212) 583-9500
                                        pechman@pechmanlaw.com
                                        cuadra@pechmanlaw.com

16

*Attorneys for Plaintiffs, the Putative FLSA*
*Collective, and the Putative Rule 23 Classes*